RECEIVED
JAN 05 2015
BY MAIL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# _____ DIVISION

Charles Ryan Glover
_____)
                               )
_____)
                               )
                               )
_____)
(Enter above the full name of the Plaintiff[s]  )
in this action.)               )
                               )
                               )
                               )
         - vs -                )
                               )             Case No. _____
Missouri Child Support Enforcement Agency )
Missouri CSE Agency Director Alyson Cambell  )   (To be assigned by Clerk
                               )                 of District Court)
Missouri CSE Agency Case Workers Et. All )
Missouri CSE Agency Ken Waller )
                               )
San Diego California CsE Agency )
San Diego CA CSE Agency Case Workers )
                               )
Illinois CSE Agency & Case Workers )
Jackson County IL Judge Dahlen )
                               )
Jackson County Attorney General David Brown )
Jessica Lee Burrow             )
(Enter above the full name of **ALL** Defend-  )
ant[s] in this action. Fed. R. Civ. P. 10(a)   )
requires that the caption of the complaint    )
include the names of **all** the parties. Merely  )
listing one party and "et al." is insufficient. )
Please attach additional sheets if necessary.  )

## COMPLAINT

I.  State the grounds for filing this case is Federal Court (include federal statutes and/or U.S. Constitutional provisions, if you know them):

## COMPLAINT

I. State the grounds for filing this case is Federal Court (include federal statutes and/or U.S. Constitutional provisions, if you know them):

1) Article VI, The Supremacy Clause
2) Article IV – Interstate Relations
3) Amendment I –Religion, Speech, Assembly, and Politics
4) Amendment IV – Searches and Seizures
5) Amendment V- Grand Juries, Self-Incrimination, Double Jeopardy, Due Process, and Eminent Domain
6) Amendment VII – Trial By Jury in Common Law Cases
7) Amendment VIII – Bail, Cruel and Unusual Punishment
8) Amendment IX – Rights Retained by The People
9) Amendment XIV – Citizenship, Due Process, and Equal Protection of the Laws
10) Consumer Credit Protection Act
11) Truth In Lending Act
12) Whistleblower Protection Act
13) False Claims Act
14) Defamation of Character
15) Slander & Libel
16) Writ of Habeas Corpus, which gives an accused individual the right to appear in court to hear the Formal Charges against them, cannot be suspended except to enhance public safety during times of war, rebellion, or invasion. And an individual cannot be tried on ex-post facto.

II.     Plaintiff, Charles Ryan Glover, resides at

219 15th St. Terre Haute, Vigo County, Indiana, 47807

III.

1) Defendant, Missouri Child Support Enforcement Agency lives at, or its business is located at

   P.O. Box 6790, Jefferson City, Cole County, Missouri, 65109

2) Defendant, Missouri CSE Agency Director Alyson Campbell, lives at, or its business is located at

   P.O. Box 2320, Jefferson City, Cole County, Missouri, 65109

3) Defendant, Missouri Child Support Enforcement Agency Case Workers ET. All, lives at, or its

   business is located at P.O. Box 6790, Jefferson City, Cole County, Missouri, 65109

4) Defendant, Missouri Child Support Enforcement Agency Ken Waller, lives at, or its business is located at, <u>Unknown Address</u>

5) Defendant, San Diego California Child Support Enforcement Agency, lives at, or its business is

   located at, DCSF 220 West Broadway room 5003, San Diego, San Diego County, California 92101

6) Defendant, San Diego CA CSE Agency Case Workers, lives at, or its business is located at

   DCSF 220 West Broadway room 5003, San Diego, San Diego County, California 92101

7) Defendant, Illinois Child Support Enforcement Agency & Case Workers ET. All, lives at, or its

   business is located at, 100 West Randolph Street 6-200, Chicago, Cook County, Illinois 60601

8) Defendant, Jackson County IL Judge Dahlen, lives at, or its business is located at

   1001 Walnut St. Murphysboro, Jackson County, Illinois, 62966-2177, and
   P.O. Box 388, Murphysboro, Jackson County, Illinois, 62966-0388

9) Defendant, Jackson County Attorney General David Brown, lives at, or its business is located at

   104 East DeYoung St. Marion, Marion County, Illinois, 62959

10) Defendant, Jessica Lee Burrow, lives at, or its business is located at, <u>Unknown Address</u>

IV. Statement of claim (State as briefly as possible the facts of your case. Describe how each defendant is involved. You must state exactly what each defendant personally did, or failed to do, which resulted in harm to you. Include also the names of other persons involved, dates, and places. Be as specific as possible. You may use additional paper if necessary):

I. "Qui facit per alium, facit per se", "He who acts through another is deemed in law to do it himself"

II. At age 19 Jessica used Charles Glovers' name and Social Security Number to open numerous credit accounts and ran up a few thousand dollars in debt in Charles Glovers name when he was only 17 years old (A Minor)

III. Jessica Lee Burrow had a child with Charles Ryan Glover by the name of Ricki Lee Burrow, and she was born shortly after he turned 18

IV. Jessica Burrow continued to utilize Charles Glovers, name and Social Security Number after they separated, and she moved to a couple other residences using his name and social security number to open up business accounts in his name; running up bills with his credit

V. Jessica Burrow and Charles Glover created a "Proof of Support" contract which was signed and notarized by both parties, and stated that Charles Glover was providing "Child Support" for Ricki Burrow prior to enlisting into the United States Navy on 07/16/2002

VI. Charles Glover added Ricki Burrow to his Page 2 Military Records as a Dependent, and she was eligible for full medical and dental benefits. Ricki Burrow had full Dependent Status

VII. Charles Glover and Legal Counsel of The U.S. Navy established an Allotment to Pay Child Support for Ricki Lee Burrow which was direct deposited to Jessica Burrows bank account. Legal Counsel of The U.S. Navy advised Charles Glover "to keep thorough documentation of his daughter Ricki Burrow throughout his enlistment", and Mr. Glover listened to this advise

VIII. Jessica Burrow received these direct deposits, and the amount was in excess of what the State Agency had calculated based off of Charles Glovers' wages

IX. Jessica Burrow committed Fraudulent statements using Charles Glover's name and Social Security number (again) to the State of Missouri Child Support Enforcement Agency, claiming that she was not receiving child support, medical, and dental benefits for Ricki Burrow

X. Jessica Burrow deliberately committed these fraudulent actions with the intention of defrauding the State and Federal Government, and Charles Glover

XI. The State of Missouri Child Support Enforcement Agency opened up a case against Charles Glover to seek monetary relief on behalf of Jessica Burrow in lieu of investigating Ms. Burrows' statements

XII. Charles Glover was not initially able to respond promptly and in a timely manner because he was deployed to war while serving in The United States Navy

XIII. Charles Glover was able to respond to The State Agency after he returned from deployment, and promptly took his daughter, Ricki Burrow to The State of Missouri Child Support Enforcement Agency for Paternity Testing. Additionally, Ken Waller notified Charles Glover that "Jessica Burrow had repeatedly disregarded The State Agencies request for her to bring Ricki Burrow in to their office for paternity testing". Charles Glover was entirely cooperative with all of the State Agencies requests throughout the entire process

XIV. Charles Glover spoke with the case worker Ken Waller numerous times, and informed him, that he was in fact paying Child Support, and faxed him documentation that he requested on 06/03/04

XV. Charles Glover and Ken Waller spoke numerous more times on the phone. After receiving Charles Glovers fax information, Ken Waller stated that the case was "Out of his hands", and he transferred the case to San Diego California Child Support Enforcement Agency to establish jurisdiction. However, Mr. Waller sent Mr. Glover a copy of Jessica Lee Burrows application for assistance which showed that she had claimed that Mr. Glover was not paying support in Jessica Burrows own hand writing, and signed by her. He knew that she had committed fraud, and instead of dealing with it, he passed the buck off to the next agency

XVI. San Diego California Child Support Enforcement Agency sent Charles Ryan Glover notices, however, he was unable to respond again because he had been deployed to war for a second time while serving in the United States Navy

XVII. Prior to Charles Glovers return from his second deployment; The San Diego California Child Support Enforcement Agency had already calculated that Mr. Glover should be paying 260.00 dollars per month based off of his wages. Additionally they had calculated that he owed around 1,200.00 dollars in back support in absence of his response. They placed a judgment against him and garnished all of his wages in addition to the child support he was already paying. They did this before Charles Glover could respond to their requests and prove that he was already paying child support

XVIII.   Upon returning from his 2nd deployment, The San Diego California Child Support Enforcement Agency submitted a summons for the release of Charles Glover from the military so Mr. Glover could attend civilian court. This summons had to go through Charles Glovers' entire chain of command all the way up to the Commanding Officer of his ship. Charles Glover went before his Commanding Officer and provided documented proof from the Dispersing Office that he had in fact been paying child support. Mr. Glovers Commanding Officer sent him to court with a letter verifying that he was in fact paying child support, and that no legal action was to be taken aboard his ship at his command. If, Mr. Glover, had not been paying child support, he would have been subjected to Court Marshal of The United States Military

XIX.   Charles Glover then proceeded to go before the civilian court in San Diego California, and submitted evidence that he was in fact paying child support in excess of what had been calculated based off of his wages. The court ordered the agency to stop garnishing his wages; however no monies were ever returned to Mr. Glover. Additionally, Mr. Glover also notified the San Diego California Child Support Enforcement Agency that Jessica Lee Burrow was committing fraud. The San Diego California Child Support Enforcement Agency allowed Jessica Burrow to withdraw from the case which sought child support, without reciprocity or punishment for her fraudulent statements and actions. They let her get away with it, and they didn't go after her for the money and benefits that she stole and defrauded from the government and Mr. Glover. They just let her drop the case. The State Agency was informed that Jessica Burrow had committed fraud and did nothing about it, again

XX.   Charles Ryan Glover continued to pay child support, he was deployed a 3rd and last time in the U.S. Navy, and honorably separated 07/17/2006

XXI.   Charles Ryan Glover returned home and continued to pay child support while attending college. He additionally gave Jessica Burrow over 1 thousand dollars for Christmas to buy presents for all three of the girls. She took that money, and hired an attorney. Then she frivolously took Mr. Glover to court in Jefferson County Missouri fraudulently claiming once again, that she was not receiving child support

XXII.   Jessica Burrow was additionally denying Charles Glover all visitation rights to Ricki Burrow

XXIII.   Charles Glover hired legal representation, and informed his attorney that Jessica Lee Burrow had committed fraud in a case involving The Missouri Child Support Enforcement Agency, and the San Diego California Child Support Enforcement Agency. He provided copied documentation of this to his attorney

XXIV.   The Honorable Judge Page, Ordered that Charles Glover and Jessica Burrow attend Parenting Seminars. Charles Glover attended the Seminar which were expenses paid out of his own pocket. Jessica Burrow did not follow court orders, and never attended the seminar

XXV. The Honorable Judge Page, Ordered that Charles Glover and Jessica Burrow attend Mediation to agree upon a child support amount. At which time Jessica Burrow admitted that Charles Glover was in fact paying support, but she was not happy with the amount. Not being happy with the amount paid does not constitute or justify committing numerous counts of fraud

XXVI. Jessica Burrow failed to show up to court numerous times, and failed to uphold the judges' court order that gave Charles Glover visitation rights to Ricki Burrow. The Honorable Judge Page and both attorneys were unable to enforce that Jessica Burrow show up to court or provide Charles Glover with court ordered visitation of Ricki Burrow

XXVII. Jessica Lee Burrows first attorney resigned as her legal representative, and she hired a new attorney

XXVIII. Court dates kept getting postponed for over 2 years and Charles Glover was driving 5 hours round trip each time to attend court in Missouri just to be notified that court had been continued to another date. Charles Glover had to take time away from his work in academics while he was attending college to entertain this frivolous lawsuit, driving back and forth, and attending court, and this ultimately created a hardship towards his personal life, unnecessary added time and expenses, and infringed upon his education

XXIX. Jessica Lee Burrow continued to not show up to court

XXX. Charles Glovers' attorney was unable to fulfill her duties as his legal representation because she had gotten pregnant. Mr. Glovers' case was transferred between different attorneys within their firm. Nothing was getting accomplished, so after trying to reconcile these disagreements, Mr. Glover fired his legal representation

XXXI. The Legal Firm that Charles Glover had hired to represent him had numerous discrepancies with his attorney and they released her from the firm. After which, she sued Charles Glover under a different legal entity and claimed that he owed her in excess of Twenty Five Hundred Dollars (2,500) in addition to the Fifteen Hundred Dollar Retainer (1,500). She filed judgment against Charles Glover

XXXII. The case between Jessica Burrow and Charles Glover was closed and no child support order was declared

XXXIII. Jessica Lee Burrow then went back to The State of Missouri Child Support Enforcement Agency and they allowed her to re-open the case from numerous years prior

XXXIV. The State of Missouri Child Support Enforcement Agency contacted Charles Glover trying to enforce a judgment in the rears and excess of Twenty Five Thousand Dollars (25,000.00). Mr. Glover notified them yet again that the entire case had been brought about by fraudulent statements made by Jessica Lee Burrow

XXXV. The State Agency Notified Charles Glover that he had to prove that Jessica Burrow had committed Fraudulent Statements. Mr. Glover advised them that he had already provided that documentation numerous times

XXXVI. Charles Glover spoke with the collection agency that was subcontracted by The State Agency, and the representatives had no idea what the legal scope of The State Agency was. They also had no idea how to reconcile the issue at hand, and acted in a very unprofessional manner, often times provoking and threatening Charles Glover with legal action and force. These collection agents harassed Mr. Glover repeatedly for extended periods of time without offering any type of resolution except to pay the amount owed

XXXVII. The State Agency sent Charles Glover numerous letters threatening to suspend and revoke all of his licenses, passport, and privileges. They also threatened to take away Mr. Glovers freedoms and liberties, and his personal property

XXXVIII. Charles Glover tried to reconcile this situation numerous times by requesting to speak with managers and officers higher in command with no avail

XXXIX. Charles Glover formally Appealed, and Requested a Review of the case. Both, The State of Missouri Child Support Enforcement Agency and The State of Illinois Child Support Enforcement Agency did not even recognize or entertain Mr. Glovers Appeal or Request for Case Review

XL. Charles Glover formally requested documentation from The San Diego California Child Support Enforcement Agency, and they had **only** kept 16 pages of documentation on file. He received this documentation, however, The San Diego California Child Support Enforcement Agency did not keep proper documentation of the case

XLI. Charles Glover formally requested Case File documentation from The State of Missouri Child Support Enforcement Agency, and they refused to submit to him those documents

XLII. Charles Glover formally requested that The State Agency do an Internal Investigation into the Fraudulent Statements made by Jessica Burrow, and requested that they investigate which of their officers was helping her commit fraud

XLIII. Charles Glover finally spoke with the Director of The Missouri Child Support Enforcement Agency, Alyson Campbell and informed her that the entire case was brought about by Fraudulent Statements made by Jessica Burrow, and that they were committing a fraudulent tort against Mr. Glover

XLIV. The State of Missouri Child Support Enforcement Agency moved forward with the case on their own accord, regardless of being notified of fraudulent activities

XLV. Charles Glover was Summons to attend court in Jackson County Illinois where he met with Attorney General David Brown in a private meeting room. Mr. Glover brought all of his documentation into that room and showed Mr. Brown evidence that supported that the entire case was brought on by fraudulent statements. David Brown looked at the documentation and literally disregarded it. Mr. Brown then stated "I don't see anything here" and then Mr. Brown and Charles Glover proceeded to court

XLVI. Upon going to court, Mr. Brown proceeded to present his case. Judge Dahlen did not give Charles Glover an opportunity to present his case. Charles Glover explained the events that had taken place, and tried to provide documentation supporting his statements. Judge Dahlen behaved in a similar fashion as Attorney General David Brown, she looked through the documentation, disregarded it, and then stated "I don't see anything here"

XLVII. Judge Dahlen enforced a judgment in excess of Twenty Five Thousand Dollars (25,000.00)

XLVIII. Charles Glover did not have Twenty Five Thousand Dollars to pay The State Agency

XLIX. The State of Illinois took away Charles Glovers' drivers' license. However, because of the rural area that Mr. Glover lived in, he had to continue to drive in order to commute back and forth to work

L. Charles Glover was Arrested and charged with Driving with a Suspended License. The Police put him in Jackson County jail, and Mr., Glover bonded himself out

LI. Mr. Glover explained to his Public Defender the events that had transpired leading up to the Suspension of his Drivers' License, and Arrest. Mr. Glovers Court Appointed Attorney seemed to think Mr. Glover had a strong case in regards to filing a Federal Civil Complaint against The State Agency

LII. Mr. Glover would be more than happy to itemize a table of contents describing every article of supporting documentation, in his possession, for the court, on behalf of The State Agency

LIII. "Res Ispa Loquitur", "The Thing Speaks For Itself", Jessica Burrow committed Fraudulent Actions which caused The State Agency to commit Fraudulent Actions on her behalf

V. Relief:  State briefly and exactly what you want the Court to do for you.

I. Internal Investigation regarding the Negligent and Fraudulent Actions of The State Administrative Agencies and State Officials

II. Investigation of Fraudulent Actions of Jessica Burrow regarding her Involvement with The State Administrative Agencies

III. Review and Reform the Scope of Enabling Legislative Power Delegated to The State Administrative Agencies

IV. Review and Reform Checks and Balances Regarding the Procedural, Interpretive, and Legislative Rules that Specify how The State Agency Must Conduct Itself

V. Temporary Suspension of Judgment against Charles Glover until Court has time to review this case and Determine a Conclusion

VI. Review Evidence and Dismiss Judgment against Charles Glover

VII. Restore Mr. Glovers Credit, Reputation, and Clear His Name

VIII. Charles Glover would like to Respectfully Reserve the Right to Request Further Remedies and Possible Monetary Relief at a later point in time

VI.  MONEY DAMAGES:

A) Do you claim either actual or punitive monetary damages for the acts alleged in this complaint?

YES  X   NO

B) If your answer to "A" is YES, state below the amount claimed and the reason or reasons you believe you are entitled to recover such money damages:

I believe I am entitled to monetary relief because the State Agencies have literally destroyed my life, my credit, created hardships for government career opportunities, infringed upon my civil rights and liberties, and harassed me for years based on fraudulent statements made by Jessica Burrow. What the State Agencies have done in collaboration with Jessica Burrow is completely and utterly unconscionable

VII.  Do you maintain that the wrongs alleged in the complaint are continuing to occur at the present time?

YES  X   NO

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __30th__ day of __December__, 20__14__

Signature of Plaintiff(s) _____

Charles Ryan Glover

Commonwealth of Virginia
City/County of __Virginia Beach__

This instrument was acknowledged before me
on 30th day of Dec., 20 14 by Charles Ryan Glover

__Dorothy T. Harland__
Notary Public's Signature



DOROTHY TYSON HARLAND
NOTARY PUBLIC
REGISTRATION # 7502890
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
MARCH 31, 2015